GEORGE A. ESTLER, RESPONDENT, v. THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, APPELLANT.

Submitted December 6, 1917—Decided June 5, 1918.

Plaintiff's horse was frightened and caused to break his fastening, and run away, injuring himself so that he had to be destroyed, by reason of the fact that a locomotive of the defendant, while starting a train of two or more cars up a somewhat steep grade close by, emitted quantities of steam and smoke, spun its driving wheels around and caused a terrifying and unusual noise from the stack. *Held*, that in the absence of any evidence to indicate that the performance of the engine was due to malicious or wanton conduct of the defendant's servant operating the engine, no cause of action was shown, and that there should have been a nonsuit or a direction for the defendant.

On appeal from the Morris Common Pleas.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the respondent, *Elmer W. Romine.*

For the appellant, *Frederic B. Scott.*

The opinion of the court was delivered by

PARKER, J. The suit was for damages sustained by reason of the fact that plaintiff's horse being frightened by noises emitted from a locomotive operated by the defendant company, ran away and broke his leg so that he had to be shot.

The negligence alleged and on which plaintiff rested his claim to a recovery was that the locomotive was caused by defendant's servants to emit terrifying and unusual noises so that the horse was thereby frightened and broke his halter preliminary to running away as aforesaid.

The grounds of appeal argued are that the court refused to grant a nonsuit and refused to direct a verdict for the defendant when requested by defendant's counsel so to do. Our conclusion on the examination of the case is that the motions were well founded and should have been granted. The facts in the case are substantially as follows: Plaintiff's employe, a man named Gordon, was engaged in driving the horse and a dump cart in carting soft coal to the power house at Boonton, which was near to a railroad track of the defendant. About noon he unhitched the horse and tied him by a rope around the neck to a large boiler that was lying close by, and gave him his dinner. While the horse was eating his dinner the locomotive in question backed down on the track already mentioned for the purpose of coupling up with two or more cars and hauling them away to some other place. There was a fairly steep grade at this locality, up which it was necessary for the cars to be hauled by the locomotive, and a reading of the testimony produced for the plaintiff makes it perfectly obvious that the terrible and unusual noises and emission of steam and smoke from the smokestack amounted to nothing more than that the engine, having difficulty in hauling the cars up the grade, the wheels slipped and spun around with the rapid puffing necessarily incident to that phase of operation. The characterization by plaintiff's witnesses of the terrible noise and disturbance and the spinning of the wheels indicates no more than this.

The case is not within the class of cases typified by *Bittle* v. *Camden and Atlantic Railroad Co.*, 55 *N. J. L.* 615, and *Cannon* v. *Delaware, Lackawanna and Western Railroad Co.*, 82 *Id.* 730, nor in that class of which *Butler* v. *Easton and Amboy Railroad Co.*, 76 *Id.* 703, is an example. The Bittle and the Cannon cases rested on evidence from which the jury was entitled to infer that the defendant's servant, out

of pure mischief and wantonness, blew unusual blasts on the whistle, after it was or should have been evident to him that the horse was likely to be frightened thereby. The Butler case in which the declaration charged that the locomotive and tender were of unusual size and painted in an unusual color and pattern, nevertheless rested fundamentally on the fact that they were unnecessarily within the limits of a public highway and remained there an unreasonable and unnecessary length of time so that they constituted a nuisance. There is nothing in this case to show that the locomotive and train were on any highway, and, indeed, there was no such claim. Neither is there anything in the case to show that the spinning of the wheels and the emission of smoke and steam from the smokestack were intentionally caused by the engineer or any other servant of the defendant in connection with knowledge of the presence of the horse or the likelihood of his being frightened. On the contrary, the only employe of the defendant who seems to have seen the horse at all before he broke away was the conductor, who, of course, was not operating the engine. The engineer testified that he did not see the horse at all. Plaintiff's claim that the train had become stalled on the grade was denied by all the defendant's witnesses; but, assuming that it had become so stalled, and the jury certainly were entitled so to find upon the testimony, there remains nothing to indicate that the performance of the engine was more than what, as a matter of common knowledge, any engine is likely to do when an attempt is made to start a train with an insufficient hold upon the rail. In our view, the case is controlled by the recent case of *Mingos* v. *Central Railroad Co.,* in the Court of Errors and Appeals, reported in 81 *N. J. L.* 677, where the horse was frightened by a loud, shrill whistle, blown for a railroad crossing, and it was held that the fact that the whistles were sharp, loud, long and shrill, so as to startle a traveler on the highway, that it was louder than others and seemed unusual to a school boy, did not, in the absence of evidence that it was needlessly or wantonly blown, justify an inference of negligence. So, in the present case, where there is nothing to show

either that the engine was out of order or that the spinning of the wheels and the discharge of smoke and steam were caused by some intentional or wanton act of the engineer, there was nothing upon which the jury were entitled to find negligence in the operation of the engine and train.

The judgment will be reversed, to the end that a *venire de novo* issue.